1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  AJAXO INC., et al.,

11          Plaintiffs,

12      vs.                                    CIV-S-07-0945-GEB GGH

13  BANK OF AMERICA TECHNOLOGY
    AND OPERATIONS, INC., et al.,
14
            Defendants.              ORDER
15  _____/

16          On August 28, 2008, the parties, by and through their counsel, were heard in

17  connection with defendant Bank of America Technology and Operations, Inc., Bank of America

18  Corp. and Bank of America National Association's ("Bank of America") motion for sanctions

19  and order of contempt, filed July 30, 2008, and Bank of America's motion to file documents

20  under seal, filed July 30, 2008, and amended on August 11, 2008.  Richard Antognini appeared

21  for plaintiffs Ajaxo, Inc. and K.C. Multimedia, Inc. ("KCM").  Luann Simmons and Whitney

22  McCollum appeared on behalf of Bank of America.  Matthew Schechter appeared for defendant

23  Allen Tam.   After hearing, the court issues the following order.

24  \\\\\

25  \\\\\

26  \\\\\

1

I. MOTION FOR SANCTIONS AND CONTEMPT

Bank of America brings this motion, asserting that plaintiffs and their counsel disclosed confidential attorneys' eyes only ("AEO") documents to Mr. Koo and Ms. Chun,[1] plaintiffs' founders and principals, and to plaintiff's expert (Hampton) without first making disclosures required by the Protective Order.  Defendants seek any or all of the following sanctions: civil contempt, criminal contempt, Rule 37(b) sanctions, sanctions under the court's inherent authority, and an order compelling a forensic examination of Koo's and Chun's personal computers by an independent outside consultant.  Plaintiffs respond that defendants' motion is replete with falsehoods and exaggerations, and that they committed at most only one technical violation while defendants also committed similar technical violations.  Furthermore, plaintiffs claim that Chun and Koo have been involved in litigation against Bank of America since 2001 in the trade secrets case and have acquired enormous knowledge independently which is not based on their review of confidential AEO materials.

Where contempt is sought to compensate an aggrieved party for failure of an adverse party to comply with court orders, the asserted contempt is civil in nature.  United States v. Asay, 614 F.2d 655, 659 (9th Cir. 1980).  To find civil contempt: ". . . the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that the order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order."  Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).  There need not be a willful violation of the order in order for the court to find civil contempt.  United States v. Asay, 614 F.2d 661.  See also United States v. Laurins, 857 F.2d 529, 534 (9th Cir. 1988).

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or

---

[1] Specifically, Bank of America contends that Koo and Chun were given hard copies of documents and had an electronic copy on one of their laptops.

1  with court orders enforcing those rules." <u>Wyle v. R.J. Reynolds Industries, Inc.</u>, 709 F.2d 585,

2  589 (9th Cir. 1983).  Rule 37 provides that in lieu of, or in addition to, imposing other sanctions,

3  > If the motion is granted or if the disclosure or requested discovery
   > is provided after the motion was filed, the court shall, after

4  > affording an opportunity to be heard, require the party or deponent
   > whose conduct necessitated the motion or the party or attorney

5  > advising such conduct or both of them to pay to the moving party
   > the reasonable expenses incurred in making the motion, including

6  > attorney's fees, unless the court finds that the motion was filed
   > without the movant's first making a good faith effort to obtain the

7  > disclosure or discovery without court action, or that the opposing
   > party's nondisclosure, response, or objection was substantially

8  > justified, or that other circumstances make an award of expenses
   > unjust.

9

10  Fed. R. Civ. P. 37(a)(4)(A).

11  "[I]f a failure to comply has occurred, it becomes incumbent upon the disobedient

12  party to show that his failure is justified or that special circumstances would make an award of

13  expenses unjust.  Notes of the Advisory Committee on Rule 37." <u>David v. Hooker</u>, 560 F.2d

14  412, 419 (9th Cir. 1977).

15  In addition to Rule 37 sanctions, "[c]ourts are invested with inherent powers that

16  are 'governed not by rule or statute but by the control necessarily vested in courts to manage their

17  own affairs so as to achieve the orderly and expeditious disposition of cases.'" <u>Unigard Sec. Ins.</u>

18  <u>Co. v. Lakewood Engineering & Mfg. Corp.</u>, 982 F.2d 363, 368 (9th Cir. 1992) (quoting

19  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)); <u>accord</u>

20  <u>Anheuser-Busch, Inc. v. Natural Beverage Distributors</u>, 69 F.3d 337, 348 (9th Cir. 1995)

21  (recognizing inherent power to dismiss counterclaim for concealing discovery documents); <u>Winn</u>

22  <u>v. Associated Press</u>, 903 F. Supp. 575, 580 (S.D.N.Y. 1995) (imposing monetary sanctions for

23  deliberately impeding discovery and willful noncompliance with document production).

24  The first violation concerns plaintiffs' damages expert, Scott Hampton, who has

25  never been disclosed or pre-qualified as an expert under section 8 of the Protective Order, but his

26  Rule 26 report states that he reviewed and relied on materials designated as AEO, including

1   Chris Moore's deposition transcript which was designated in part as AEO.  See Protective Order

2   at § 8 (docket #44); Simmons Decl., Ex. 2.  He also signed the agreement to be bound by the

3   Protective Order after the protected material was disclosed to him, and defendants still have not

4   received a copy of it.  Plaintiffs still have not provided written notice to Bank of America or an

5   opportunity to object, pursuant to § 8 of the Protective Order.

6          Although Hampton may have signed Exhibit A to the Protective Order, agreeing

7   to be bound by it, plaintiffs do not dispute defendants' claim that they were not notified in

8   advance of the intention to show Hampton the AEO material.  Plaintiffs explain that counsel

9   inadvertently sent Hampton a copy of the complete Moore deposition from the trade secrets case,

10  and failed to segregate the AEO materials.  When counsel realized his mistake, he asked

11  Hampton to return the transcript, and Hampton did, without reviewing it or relying on it to form

12  his opinions, in substantial compliance with § 10 of the Protective Order.  Antognini Decl., filed

13  August 15, 2008, ¶ 3.

14         Although plaintiffs' counsel's AEO disclosure was concededly inadvertent,

15  plaintiffs' failure to give notice of their damages expert and their failure to abide by the

16  Protective Order by giving him AEO materials in advance of complying with the technical

17  requirements of that Order is not justifiable and therefore sanctionable.

18         Plaintiffs' second violation concerns Ajaxo and KCM founders and principals,

19  Mr. Koo and Ms. Chun, who attended the 30(b)(6) deposition of Chris Moore, despite plaintiffs'

20  failure to disclose either of them as employees to whom the receiving party wished to disclose

21  confidential materials under § 7.3.2 of the Protective Order.  It requires the receiving party to

22  identify such persons before any disclosure and they must sign the agreement to be bound by the

23  Protective Order.  It appears that Koo and Chun refused to leave the deposition when plaintiffs'

24  counsel questioned Moore about highly confidential information, over Bank of America's

25  objections.  In particular, plaintiffs' counsel questioned Moore about the source code without

26  asking Koo and Chun to leave the room first.  Simmons Decl., Ex. 3.  Although plaintiffs may be

1   correct that defendants did not originally object to their presence when the deposition began and

2   Koo and Chun left the room eventually, plaintiffs' counsel was careless in straying into AEO

3   areas while Koo and Chun were still in the room.

4            The court will accept plaintiffs' representation in regard to defendants' claim that

5   plaintiffs additionally violated the protective order by disclosing documents to Koo and Chun

6   prior to designating them under § 7.3.2.  Plaintiffs have submitted evidence that Koo and Chun

7   signed Exhibit A on June 6, 2008, prior to the July 17, 2008 deposition, even though they

8   apparently did not inform defendants.  Antognini Decl., ¶ 5.

9            During the deposition, Chun was responsible for organizing and pulling

10  documents from boxes to be used by plaintiffs' counsel.  Many of these documents were

11  protected materials.  Plaintiffs' counsel states that he was the one who organized the folders, and

12  that Chun merely handed him the folder when he asked for it by number, but did not look inside

13  the folder.  Although this may be true, or not, plaintiffs' counsel was once again careless in

14  setting up a potential situation for a sanctions motion.

15           Defendants make much of a directory and file listings of the Bank's source codes

16  which they claim contains names of files which reveal important information about the current

17  system.  Plaintiffs contend that defendants did not originally claim it was protected until after

18  Moore objected upon being questioned about it at his deposition.  Although this may be true, the

19  directory is in fact AEO material, and plaintiffs' failure to take precautions where it was not clear

20  what they were dealing with, is one more example of their carelessness with regard to protected

21  material in this case.

22           Unlike the aforementioned examples of plaintiffs' counsel's carelessness,

23  counsel's actions in regard to Chun accessing an AEO document on her personal laptop

24  computer and printing it out during the deposition are not so clear-cut.  Despite his clear-cut

25  admissions at the deposition, that his clients had been given an AEO document, plaintiffs'

26  counsel data explained that he printed this document from Chun's computer through a stick drive

1   because he did not have time to print it the night before the deposition when defendants produced

2   it electronically, and his computer did not have a driver for the printer.  Plaintiffs assert that there

3   is no document on Chun's computer due to its having been printed off the stick drive.  The other

4   AEO document, a directory for the source code, was printed from plaintiffs' counsel's computer

5   and a copy was not given to Chun or Koo.  Plaintiffs are adamant that Koo and Chun did not

6   review AEO materials.  Koo Decl., filed August 15, 2008, ¶ 5; Chun Decl., filed August 15,

7   2008, ¶ 4.  It is impossible to make a determination in this regard at the present time because of

8   the aforementioned inconsistencies.

9          The aforementioned arguments indicate that plaintiffs' counsel is not paying

10   sufficient attention to the Protective Order.[2]  Protective orders are important in litigation, the

11   breach of which could lead to very serious consequences.  They should be respected in all their

12   particulars without one party determining what that party thinks sufficiently important such that

13   attention will be paid to the order.  On the other hand, the complained of breaches here, to put it

14   mildly as did counsel for Bank of America, did not reveal the "crown jewels."

15          Therefore, plaintiffs and/or their counsel will be partially sanctioned for defense

16   counsels' expenses in bringing the instant motion, as well as the further order that Koo and Chun

17   may not be present at future depositions in this case.

18          Defendants seek a total of $63,343 in fees.[3]  Ms. Simmons states that she and

19   another partner bill at a rate of $595 per hour, while the associates who worked on this matter bill

20   at a rate of $450 per hour.  The case managers and case assistant who worked on the matter bill at

21   a rate of $250 per hour.

22   \\\\\

23

24          [2]  Because the clear and convincing evidence standards required for civil contempt are not
       met in this case, this type of sanction will not be addressed.

25

26          [3]  Exhibit 16, a spreadsheet that details the fees incurred, indicates a total of $64,343.
       Simmons Decl., filed August 21, 2008.

1      Whether a requested hourly rate is reasonable normally must be established by the

2  attorney claiming the fees, who should submit affidavits and other evidence tending to show that

3  the requested rates are in line with those of lawyers of reasonably comparable skill, experience,

4  and reputation.  Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 1547 n.11 (1984).  Prevailing

5  market rates in the relevant legal community determine whether the requested hourly rate is

6  reasonable.  "[T]he choice of a relevant community and the prevailing rate in that community are

7  crucial to establishing the amount of attorney's fees granted."  Barjon v. Dalton, 132 F.3d 496,

8  500 (9th Cir.1997).  The court's first task, accordingly, is to determine the applicable legal

9  community from which comparable rates are to be applied.

10      In support of her request for $595/hour, defendants' counsel, Luann Simmons,

11  submitted her declaration which states that she is familiar with standard billing rates in San

12  Francisco and that these rates are within the customary rates charged by other large law firms in

13  that city.  Simmons Decl., filed August 21, 2008, at ¶ 12.  Plaintiffs have not addressed the issue

14  of the amount of fees requested.

15      The Ninth Circuit has emphasized that "[a] court awarding attorney fees must

16  look to the prevailing market rates in the relevant community."  Bell v. Clackamas County, 341

17  F.3d 858, 868 (9th Cir. 2003).[4]  Using different terminology, the Sixth Circuit has pronounced:

18  "this Court has made clear that it is not an abuse of discretion for a court to apply local market

19  rates.  Thus, a renowned lawyer who customarily receives $250 an hour in a field in which

20  competent and experienced lawyers in the region normally receive $85 an hour should be

21  compensated at the lower rate."  Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997).

22  (abrogated on other grounds Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 121 S. Ct.

23  1946, (2001)).  The court has not located, and the parties have not cited, cases which flesh out the

24  distinction, if any, between "local market rates," "region" rates, and district court "forum" rates.

25

26      [4]  Unless, that is, local counsel is unavailable or inexperienced, and retained counsel
ordinarily practices in another location.  Barjon, 132 F.3d at 501-02.

1  Although defendants may actually charge the rates claimed here for work done in San Francisco,

2  this circuit has stated that  "[g]enerally, the relevant community is the forum in which the district

3  court sits."  Barjon, 132 F.3d at 500 (9th Cir.1997); Gates v. Deukmejian, 987 F.2d 1392, 1405

4  (9th Cir. 1993).

5       Another very important aspect of determining a reasonable rate is that "such rates

6  should be established by reference to the fees that private attorneys of an ability and reputation

7  comparable to that of prevailing counsel charge their *paying clients* for legal work of similar

8  complexity.  Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992) (emphasis

9  added); Welch v. Metropolitan Life Insurance Company, 480 F.3d 942, 946 (9th Cir. 2007).

10  Rates, accordingly, should be comparable to rates actually received from "paying clients."

11  Defendants have not submitted evidence as to payments received from private paying clients.

12  Therefore, the court will assume the rates proposed are those actually charged and received by

13  O'Melveny & Myers.

14       Although the requested rates may be appropriate for a large law firm in San

15  Francisco with a stellar international reputation such as that of O'Melveny & Myers, they are not

16  acceptable in this case.  In fact, as observed earlier, defense counsel conceded at hearing that the

17  materials at issue are not the crown jewels of Bank of America; yet counsel wants a king's

18  ransom as a sanction.  O'Melveny & Myers may be worth this much to their clients, but there is a

19  limit to what their opponents should have to pay.  The undersigned has surveyed the hourly rate

20  in this district for copyright infringement actions.  Rates for copyright actions in this District

21  have been as low as $210 per hour and as high as $285 per hour for partners, and $180 to $200

22  per hour for associates.  See Milton H. Greene Archives, Inc. v. Julient's Auction House, LLC,

23  2007 WL 4898365 (E. D. Cal. 2007); Girlsongs v. Haddock, 2008 WL 905221 (E.D. Cal. 2008);

24  Odnil Music Ltd. v. Katharsis LLC, 2008 WL 958109 (E.D. Cal. 2008); Landis Revin

25  Nutraceuticals v. Arthur Andrew Medical, Inc., 2007 WL 397144 (E.D. Cal. 2007).  This court

26  will award defense counsel the highest prevailing rate due to the disparity between the San

1    Francisco and Sacramento rates.  The O'Melveny attorneys will therefore be awarded $285 per

2    hour for work by partners, and $200 per hour for work by associates.  Moving down from these

3    figures, the court will compensate the case managers and case assistant at the rate of $150 per

4    hour.

5                    Next, the court must determine the hours reasonably expended by defense

6    counsel.  The declaration filed by Ms. Simmons on August 21, 2008 contains an exhibit

7    supporting the hours expended in bringing this motion.  Simmons Decl., filed August 21, 2008,

8    Ex. 16.  Having reviewed that spreadsheet, the court finds that the hours claimed are excessive in

9    light of the motion filed.  Counsel seeks compensation for 48.1 hours of attorney time to prepare

10   the motion for sanctions, and 48.6 hours of non-attorney time.  The 48.1 hours includes 16 hours

11   of revisions by associates, and 10.5 hours of revisions by Simmons, the partner on the case.

12   These amounts do not even cover the reply which took a combined total of 61.6 hours of attorney

13   and non-attorney time.

14   _____Counsel may not be compensated for excessive, redundant, inadequately

15   documented, or unnecessary hours.  Hensley, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.  The

16   court need not scrutinize every entry in the slip listing – it may check a sufficient number of

17   entries to make reasonable calculations.  See Evans v. City of Evanston, 941 F.2d 473, 476-77

18   (7th Cir.1991) (upholding sampling procedure by district court).  The Circuits have "never

19   required that [district] courts set forth hour-by-hour analyses of fee requests" when calculating

20   the number of reasonable hours expended on the case.  Metropolitan Dist. Comm'n, 847 F.2d at

21   16 (quoting Jacobs v. Mancuso, 825 F.2d 559, 562 (1st Cir.1987)).  Two other factors which may

22   counsel a court to adjust the hours deemed reasonable are: (1) overstaffing and the wide range of

23   skill and experience among lawyers, and (2) the complexity and novelty of the issues raised.

24   Cunningham v. County of Los Angeles, 879 F.2d 481, 485 (9th Cir.1989).  The O'Melveny firm

25   seeks attorneys' fees based on a total of 162.6 hours, which is an excessive amount of time spent

26   in light of the relative brevity of the motion and reply, and the relatively straightforward subject

9

matter with a low level of legal complexity.  Defendants' initial sanctions motion was 15 pages long with a four page declaration and 10 exhibits filed under seal.  The 15 page reply included two short declarations and 7 exhibits filed under seal.  (Docket #s 75, 67, 77, 128, 129, 130.)  This motion was relatively simple in view of counsel's background and experience, and surely did not require an initial draft by one associate, a revision of 4.9 hours by another associate, and a second revision of 10.5 hours by partner Simmons.  In the 10.5 hours it took Simmons to revise the motion, she probably could have drafted it from scratch into final form herself, in light of her position as partner in this highly reputable firm.  Furthermore, the 48.6 hours spent on the initial motion alone by non-attorney staff is particularly problematic, even when consideration is given to the effort to file all exhibits under seal.

Finally, the undersigned must assess the significance of the problem and the results obtained with an eye towards the value of a dollar.  Sanctions motions cannot be allowed to unduly penalize attorneys lest there be a chilling effect on being able to practice law in federal court.  Litigation practice should not be a form of Russian roulette for lawyers where a sanctions bullet in the litigation revolver unnecessarily results in a financial death penalty.  It should not be that only those lawyers or firms with such assets that sanctions don't mean anything can afford to practice.

Accordingly, the court finds that considering that the motion did not present complex legal issues and was relatively short and straightforward in nature, the hours spent must be reduced by 75% for excessiveness.  Therefore, the 31.4 hours spent by partners, when reduced by 75%, totals 7.85 hours.  When multiplied by the hourly rate of $285, the total partner billing is $2,237.25.  The associate hours total 64.3, and when reduced by 75%, these hours are 16.075.  When multiplied by the hourly rate of $200, the associate billing comes to $3,215.  Non-attorney hours accrued are 66.9, and when reduced by 75%, they amount to 16.725.  These hours multiplied by the non-attorney rate of $150 per hour comes to $2,508.75.  This sub-total amount permitted to be awarded against plaintiffs and/or their counsel is $7,961.  In light of the

1  significance of the problem and the results obtained, the undersigned cuts this figure by 50% –

2  for a total sanctions award of $3980.50.

3  II.  MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL

4           On August 7, 2008, this court heard Defendants' motion to seal various

5  documents.  At that hearing, the court ordered defendants to file a revised declaration listing only

6  those documents they sought to seal that were not decided upon at that hearing, and provide good

7  cause.  At issue at that hearing were the requests to seal Exhibits 1-3 and 10 to the declaration of

8  Luann Simmons, filed July 30, 2008.  In the amended declaration, defendants now seek only to

9  file Exhibits 2 and 3 under seal.  Defendants withdraw their previous request to also file under

10  seal Exhibits 1 and 10.

11           Exhibit 2, an excerpt from the Chris Moore deposition of August 18, 2005, taken

12  in the trade secrets case, will be filed under seal as it contains source code discussion.

13           Exhibit 3, an excerpt of Chris Moore's deposition of July 17, 2008, taken in this

14  case, also will be filed under seal for the same reasons.

15  CONCLUSION

16           Accordingly, IT IS ORDERED that:

17       1.  Bank of America's motion for sanctions and order of contempt, filed July 30, 2008

18  (docket #75), is granted in part.  As ordered at hearing, Mr. Koo and Ms. Chun are precluded

19  from being present at future depositions in this case.  Plaintiffs and/or their counsel are

20  sanctioned in the amount of $3980.50.

21       2.  Bank of America's motion to file confidential documents under seal, filed July 30,

22  2008 (docket #78), as amended by #105, filed August 11, 2008, is granted.  The Clerk of the

23  \\\\\

24  \\\\\

25  \\\\\

26  \\\\\

1  Court is directed to file under seal Exhibits 2 and 3 to the declaration of Luann Simmons, filed

2  July 30, 2008 (docket #77).

3  DATED: 10/02/08                                    /s/ Gregory G. Hollows

4                                                     _____
                                                      GREGORY G. HOLLOWS
                                                      U. S. MAGISTRATE JUDGE
5  GGH/076
   Ajaxo0945.mtns.wpd
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26