UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AJAXO, INC., a Delaware Corporation; K.C. MULTIMEDIA, INC., a Delaware Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2:07-cv-00945-GEB-GGH <br><br> <u>ORDER</u> |
| Plaintiffs, | | |
| v. | | |
| BANK OF AMERICA TECHNOLOGY AND OPERATIONS, INC., a Delaware Corporation; BANK OF AMERICA CORPORATION, a Delaware Corporation; BANK OF AMERICA NATIONAL ASSOCIATION; and ALLEN TAM, an individual, | | |
| Defendants. | | |

    Pending are six motions for summary adjudication and/or summary judgment concerning Plaintiffs' claims of copyright infringement.  Plaintiffs Ajaxo, Inc. ("Ajaxo") and K.C. Multimedia, Inc. ("KCM") each seek summary adjudication on three of Defendant Bank of America's affirmative defenses; and each Plaintiff seeks summary adjudication on its claims against Defendant Allen Tam ("Tam").  Bank of America seeks partial summary judgment on two claims, arguing they are time barred, and on Plaintiffs' claims of continuing and ongoing copyright infringement of the source codes at issue in this

1

litigation, arguing they are not substantially similar to Bank of America's current code. Tam seeks summary judgment on all copyright infringement claims arguing they are all time barred.

## BACKGROUND

In 1998, Bank of America entities entered into a contractual relationship with Sing Koo ("Koo"), the founder and principal of both Ajaxo and KCM, for the purpose of developing Bank of America's online banking applications. (Simmons Decl., Ex. 1.)  In November 2000, the parties agreed to extend the arrangement and entered into a second agreement, the "Technical Contract Labor Services Agreement." (Simmons Decl., Ex. 3.)  The parties now dispute the scope of these agreements; specifically, Plaintiffs and Defendants dispute the terms of the agreements and whether the source codes involved in this litigation were developed for Bank of America under these agreements.

Tam was an employee at KCM from 1999 until 2001, and as an employee, worked on development of Bank of America's online banking applications. (Simmons Decl., Ex. 6 and 13.)  On May 4, 2001, KCM terminated Tam's employment.  Koo conducted an exit interview three days later and gave deposition testimony that Tam confessed to stealing information from KCM in exchange for employment with Bank of America in his exit interview. (Simmons Decl. Ex. 6.)  On May 14, 2001, Bank of America terminated its relationship under the 2000 agreement with Koo and KCM. (Simmons Decl. Ex. 16.)  On May 17, 2001, Bank of America offered Tam employment. (Van Berkum Decl., Ex. A.)

As an employee of KCM, Tam was provided a laptop. (Simmons Decl., Ex. 6.)  Tam returned the laptop to Koo on May 8, 2001. (Id.)  Koo gave deposition testimony that he had difficulty turning on the laptop after it was returned to him. (Id.)  KCM turned the laptop

over to the FBI for forensic examination and the results of this examination were released on January 2006.  (Ajaxo Exs. 29 and 64.)  The results found that 11,000 files had been deleted from the laptop, including the source codes involved in this litigation.  (Ajaxo Exs. 64 and 30.)

On June 5, 2001, KCM filed a trade secret action against Bank of America and Tam in California state court.  (Simmons Decl. Ex. 18.)  On June 21, 2001, Bank of America rescinded its offer of employment to Tam.  (Van Berkum Decl. ¶ 3.)  However, Bank of America agreed that it would pay Tam's legal fees in defending himself for the trade secret action; however the agreement would be null and void if it was determined Tam did misappropriate KCM's trade secrets.  (Monsoorian Decl., Ex. B.)  In April 2006, the jury in the trade secret action returned a verdict against KCM, finding that Bank of America owned the relevant software involved in that case.  (Simmons Decl., Ex. 21.)  The trade secret action is now on appeal in the Court of Appeal for the State of California, Sixth Appellate District. (Simmons Decl., Ex. 22.)

On March 28, 2006, a grand jury in the United States District Court for the Northern District of California indicted Tam.  (Schecter Decl., Ex. M.)  A superseding indictment was filed against Tam on May 2, 2006, indicting Tam for one count of Conspiracy to Commit Mail Fraud and Wire Fraud, four counts of Mail Fraud and Aiding and Abetting, and five counts of Wire Fraud and Aiding and Abetting.  (Schecter Decl., Ex. N.)  On April 30, 2008, Tam entered a plea agreement, pleading guilty to Counts Six and Seven of the superseding indictment.  (Schecter Decl., Ex. O.)

On May 17, 2007, Ajaxo filed separate Complaints against Tam and Bank of America, alleging copyright infringement of its copyrighted "wirelessproxy" and "cacheParser" source codes. On July 9, 2007, KCM filed separate Complaints against Tam and Bank of America, alleging copyright infringement of its copyrighted "proxyssl" and "sso.login.controller" source codes. The cases have been consolidated in the instant action.

## DISCUSSION[1]

### Plaintiffs' Motions for Summary Adjudication Against Bank of America

Ajaxo seeks summary adjudication on Bank of America's fifteenth, sixteenth, and twenty-third affirmative defenses. These affirmative defenses are based upon the 1998 and 2000 agreements formed between KCM and Bank of America. (Simmons Decl., Exs. 2 and 3.) Ajaxo argues Bank of America cannot base its affirmative defenses against Ajaxo's infringement claims of wirelessproxy and cacheParser upon these agreements since Ajaxo was not a party to these agreements.

Bank of America counters, providing evidence that it is disputed whether Ajaxo or KCM is the owner of wirelessproxy and cacheParser, citing to evidence from the state trade secret action. The Complaint filed by KCM in the state trade secret action claimed that KCM owned the wirelessproxy source code. (Simmons Decl., Ex. 25.) Bank of America further provides Koo's deposition testimony from the trade secret case in which he stated Ajaxo did not own cacheParser. (Simmons Decl., Ex. 55.) Bank of America also provides evidence that Ajaxo is the alter ego of KCM and therefore bound by any contracts KCM entered into with Bank of America; including evidence

---

[1] The summary judgment standard is well known and need not be repeated here.

4

that Koo is the sole shareholder of Ajaxo and KCM, and that Ajaxo and KCM have an identical Board of Directors. (Simmons Decl., Exs. 8, 18.) Since it is disputed whether KCM or Ajaxo owns the source codes at issue and whether Ajaxo is the alter ego of KCM, Ajaxo's motion for summary adjudication is denied.

KCM seeks summary adjudication of Bank of America's sixteenth, seventeenth, and twenty-third affirmative defenses which are based on the 1998 and 2000 agreements between Bank of America and KCM. KCM provides evidence that the 1998 agreement was between Bank of America National Trust and Savings Association ("NTSA") and KCM, rather than the current Bank of America defendants. (KCM Ex. 88.) Additionally, KCM provides evidence that the 2000 agreement was formed between Bank of America Technologies and Operations ("BATO"), rather than the current Bank of America defendants. (KCM Ex. 106.) KCM further cites to language in the agreements limiting NTSA and BATO's assignment rights under the agreements. (KCM Exs. 88 and 106.)

Bank of America provides controverting evidence showing the current Bank of America defendants have rights under the 1998 and 2000 agreements. Bank of America explains that in 1999, NTSA merged, leaving one of the current bank defendants, Bank of America National Association, as the surviving entity. (Simmons Decl., Ex. 2.) Under the terms of this merger agreement, all assets of NTSA passed without any conveyance or transfer of rights to the current defendants. (Simmons Decl., Ex. 45.) Further, Bank of America explains that BATO merged into one of the current bank defendants in 2004. (Simmons Decl., Ex. 4.) Under the terms of this merger agreement, all of BATO's rights passed to the current bank defendant without any transfers or conveyance. (Simmons Decl., Ex. 46.) Bank of America

5

also provides evidence that both the 1998 and 2000 agreements permitted assignment to Bank of America entities. (Simmons Decl, Exs. 3 and 4.)

Based on the disputed evidence, KCM's motion for summary adjudication is denied.

Plaintiffs' Motions for Summary Judgment Against Tam

Ajaxo and KCM each seek summary adjudication of its respective copyright infringement claims against Tam. Each Plaintiff cites to the following evidence in support of its motion: (1) Tam admitted he stole source code in exchange for employment with Bank of America in his exit interview; (2) Tam entered a guilty plea to the 2006 indictment; and (3) analysis of Tam's laptop computer revealed 11,000 files had been deleted, including the source codes involved in the litigation. (Koo Decl. ¶ ¶ 1, 12, 20, 26; KCM Exs. 11, 102, 114 117, 118.)

Tam, however, controverts Koo's declaration that Tam confessed to stealing the source code in exchange for employment with Bank of America. Tam provides declarations from Bank of America managers stating that he was offered the position with Bank of America after he no longer worked for KCM; and that Bank of America never requested or sought from Tam any trade secret, confidential, or proprietary information. (Van Berkum Decl. ¶¶ 4, 5, Ex. A.; Huyser Decl. ¶ 17.) Tam also disputes that his plea agreement and guilty plea support Plaintiffs' current claims of copyright infringement. Tam provides evidence that his guilty plea did not concern Plaintiffs' allegations of copyright infringement. (Schechter Decl., Ex. O.)

Finally, Tam disputes that the analysis of the laptop computer supports Plaintiffs' claims for copyright infringement.

"[P]laintiff[s] bringing a claim for copyright infringement must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006). Plaintiffs must also show that the two works are "substantially similar." Id. While Plaintiffs provide evidence that files were deleted from the laptop, Plaintiffs provide no evidence that Tam made copies of these files, nor that any subsequent works were substantially similar to Plaintiffs' copyrighted programs. (Tam Opp'n at 15:17-26.)

Since genuine issues of disputed material fact exist on these claims, each Plaintiff's motion for summary judgement against Tam is denied.

Bank of America's Motion for Partial Summary Judgment

Bank of America seeks partial summary judgment against both Plaintiffs, arguing Plaintiffs' claims for alleged infringement of proxyssl and cacheParser are barred by the statute of limitations. Section 507(b) of the Copyright Act prescribes, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Bank of America argues Plaintiffs' claims for infringement of proxyssl and cacheParser accrued more than three years before each Plaintiff's lawsuit was commenced. Bank of America provides evidence that Plaintiffs discovered the basis for the current claims no later than June 5, 2001, when KCM filed its trade secret action. The Complaint in that case alleged Bank of America "through its subsequent hiring of [ ] Tam, misappropriated portions of confidential information and source information." (Simmons Decl., Ex. 18.) Bank

of America further cites to Koo's deposition wherein he testified he learned Tam had stolen its source code at Tam's exit interview on May 4, 2001. (KCM's Statement of Undisputed Facts ¶ 10.)

Plaintiffs counter Bank of America prevented them from reviewing its source code until June 2005 when the court modified a protective order that prevented Koo from reviewing that source code. (Koo Decl. (docket 224) ¶¶ 22-23.) Plaintiffs assert before that review they did not know which of Plaintiffs' source codes Bank of America had in its possession. (Ajaxo Opp'n at 9:1-2; KCM Opp'n at 9:3-4.) Plaintiffs also provide evidence that it did not know which source codes had been deleted from Tam's laptop until January 2006 when the FBI released its analysis. (Ajaxo Exs. 64 and 30.)

> Often, whether or not the defendant has done anything to conceal from the plaintiff the existence of the cause of action, the statute of limitations is tolled until the plaintiff learned or by reasonable diligence could have learned that he had a cause of action. . . Although many cases state that mere ignorance of a cause of action does not toll the statute of limitations, in context these statements invariably mean only that the plaintiff has a duty of diligence: it is not enough that he did not discover he had a cause of action, if a reasonable man could have . . . The critical question, then, is a familiar one: when did the plaintiff discover the infringement?

Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 707 (9th Cir. 2004) (internal citations omitted)(internal citations and quotations omitted).

Genuine issues of disputed material facts exist as to when each Plaintiff learned or could have learned about the existence of its copyright infringement claims. Accordingly, this portion of Bank of America's motion is denied.

Bank of America also seeks summary judgment of Plaintiffs' claims for continuing and ongoing copyright infringement based on its

8

1  position that Bank of America's current source code is not
2  substantially similar to Plaintiffs' copyrighted source code. (Bank
3  of America Mot. at 19:13-15.) "Copying [in a copyright infringement
4  claim] may be established by showing that the infringer had access to
5  plaintiff's copyrighted work and that the works at issue are
6  substantially similar in their protected elements." <u>Cavalier v.
7  Random House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002). "The principle
8  that trivial copying does not constitute actionable infringement has
9  long been a part of copyright law." <u>Newton v. Diamond</u>, 388 F.3d 1189,
10 1192 (9th Cir. 2004). Bank of America provides evidence that Bank of
11 America's current code does not contain any source code based on
12 and/or substantially similar to Plaintiffs' source code.
13         Chris Moore, Bank of America's 30(b)(6) witness, declared
14 and gave deposition testimony that Bank of America converted to a new
15 online banking application called Sitekey in July 2006. (Moore Decl.
16 ¶¶ 9-10; Simmons Decl., Ex. 4.) Moore further declared that Bank of
17 America currently does not use any source code written by Koo, nor
18 does it plan to use the code in the future. (Moore Decl. ¶ 15.)
19 Additionally, Bank of America's expert, Dr. Wedig, stated in his
20 expert report that Bank of America's current code is not substantially
21 similar to the source codes Plaintiffs allege were infringed.
22 (Simmons Decl., Ex. 27.)
23         Plaintiffs' controvert Moore's averments and the Wedig
24 report with Koo's rebuttal expert report. Koo states in his expert
25 report that active maintenance of sso.login.controller is occurring on
26 Bank of America's source code control system. (Koo Expert Report at
27 8.) Koo further states in his expert report that codes in the Bank of
28 America directory contain unique signatures, indicating that Bank of

America's current code is derived from Koo's original work and is based on the source codes at issue in this litigation. (Id. at 9-15.) Koo further opines that Bank of America's evidence does not shows its current banking system was independently developed. (Id. at 10.) Koo states "[t]he fact that these signatures exist is indicative that the Bank Defendants' set of 'current code' are derivative works created as a direct result of infringing on [P]laintiffs' copyrighted material. (Id. at 16.) While Koo does not directly state in his expert report that the codes are substantially similar, he states that the Plaintiffs' copyrighted material is still in use, thereby supporting Plaintiffs' claim for continuing and ongoing infringement.

"Where reasonable minds could differ on the issue of substantial similarity, [ ] summary judgment is improper." Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). Since Plaintiffs have provided evidence controverting Bank of America's evidence that the current code is not substantially similar to the Plaintiffs' code, this portion of Bank of America's motion is denied.

Tam's Motion for Summary Judgement

Tam seeks summary judgment arguing that the applicable three year statute of limitations bars Plaintiffs' claims for copyright infringement. However, Tam is exposed to secondary liability for Bank of America's copyright infringement claims. "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169 (9th Cir. 2007). Tam is also exposed to contributory liability for any claim on which a Plaintiff may prevail against Bank of America. Therefore, for

1 | the same reasons Bank of America's statute of limitations argument
2 | fails, so must Tam's.  Accordingly, Tam's motion for summary judgment
3 | is denied.

## CONCLUSION

For the reasons stated, the pending motions for summary adjudication and/or summary judgment are denied.

Dated:  December 19, 2008

_____
GARLAND E. BURRELL, JR.
United States District Judge

11